21463. CURRY *et al.* v. CONSTRUCTION & GENERAL LABORERS UNION LOCAL NO. 438, AFL - CIO.

Submitted November 14, 1961—Decided January 4, 1962.

*Perry, Walters & Langstaff,* for plaintiffs in error.

*Poole, Pearce & Hall, John S. Patton, Wm. B. Paul,* contra.

Head, Presiding Justice. S. J. Curry and others, doing business as a partnership under the name of S. J. Curry & Company, brought a petition for injunction against Local No. 438 of the Construction and General Laborers Union, AFL-CIO. The trial judge refused to grant the interlocutory injunction, and the exception is to this order.

On November 15, 1960, the petitioners entered into a contract with the City of Atlanta for the construction of certain improvements to sewage disposal facilities of the city. The contract has a limitation of 540 days from December 5, 1960, with a penalty provision for each day beyond the limit in which the work is not completed. The petitioners operate on what is known as an "open shop" basis, that is, they employ workmen without regard to whether or not they are members of a labor organization. The petitioners were awarded only the general contract for the construction work. The city subcontracted directly with other contractors for the electrical and plumbing work connected with the project, and the petitioners have no supervision over the work of these contractors. Shortly after the petitioners started on their construction work, they were visited by representatives of various local labor unions in the Atlanta area, and a conference was arranged on February 14, 1961. The representatives of the labor unions requested that the petitioners use union workmen on the job. S. J. Curry, in his affidavit, stated that, when he told the union representatives present that the petitioners would not use union members exclusively, since they operate on an "open shop" basis, he was told by Mr. Moore (a representative of the Building Trades Council of Atlanta) and

"other representatives of the unions" that "they would use every means at their command to see that we did use union workmen on our project." On August 10, 1961, a picket was placed by the defendant at the main entrance of the construction site of the petitioners, carrying a placard with the following legend: "S. J. Curry & Company, Inc. violating contract with City of Atlanta by not paying wages conforming with those of a similar type of work in the Atlanta area. Construction and General Laborers Union 438 AFL-CIO." The picket has patrolled the construction site since that time, and because of the picket, the employees of the electrical and plumbing contractors have refused to continue their work, and carriers and suppliers have refused to deliver material and supplies. This has resulted in a partial cessation of the work, since the construction can not proceed without electrical and plumbing work and the delivery of essential supplies. The consequence of the partial cessation of work has been the discharge of all but 37 of the 72 men working on the job at the time the picket was established.

The contract of the petitioners with the city contains the following language: "Wages will conform with those being paid on similar types of work in the Atlanta area." The evidence introduced for the defendant showed that the petitioners were not paying their employees the wage scale of specified contruction contractors in the Atlanta area. James Moore, in his affidavit, stated that he had attempted to persuade the petitioners to comply with their contract with the city in regard to the payment of wages, and had conferred with officials of the city in an effort to have them require the petitioners to comply with their contract, but had been unsuccessful in both attempts.

"Peaceful picketing is not unlawful, unless it is for an illegal purpose. On the contrary, it is authorized under the constitutional guarantee of free speech." *Cook v. Huckabee Transport Corp.*, 215 Ga. 9, 13 (109 SE2d 710). The picketing in the present case was peaceful. The trial judge was authorized to find from the evidence that the petitioners were not paying wages conforming with those paid on similar types of work in the Atlanta area. It is asserted by the defendant that it has a right to use the method of picketing to inform the public of the petitioners'

failure to abide by the terms of their contract with the City of Atlanta, that it is a matter of legitimate concern to the defendant that the wages paid by the petitioners are lower than those paid on similar types of work in the area, since the contracts are ordinarily let on competitive bids and a company paying lower wages can underbid contractors paying union wages.

It is asserted in the petition, and shown by undisputed evidence of the petitioners that the establishment of a picket by a labor union (whatever placard the picket may carry) is a signal to all members of the labor unions to refuse to work on the job, or to furnish supplies for it, and this fact was known to the defendant. The petitioners have no labor dispute with their employees, and the defendant is not representing employees of the petitioners. The defendant has chosen to use a method of imparting information to the public which it knew would have the effect of paralyzing the petitioners' operations, preventing them from completing their contract within the time limit provided by its terms, and forcing them to discharge a number of their employees.

The facts of the present case are similar to those in *Powers v. Courson*, 213 Ga. 20 (1) (96 SE2d 577), in which it was held: "The decision of this court in *Woodard v. Collier*, 210 Ga. 239 (78 SE2d 526), is controlling in the instant case. Here, as in that case, the evidence demands a finding that the picket was placed on the job for the purpose of forcing Powers to employ only union labor, or be unable to comply with the terms of his contract because of the refusal of the members of other unions employed in the work to cross the picket line, and thereby slow the project to a virtual standstill. As held in that case, such picketing is for an unlawful purpose, and clearly a violation of the provisions of *Code Ann. Supp.* § 54-804, and *Code* § 66-9906. See also Local Union No. 10, United Association of Journeymen Plumbers & Steamfitters v. Graham, 345 U. S. 192 (73 SC 585, 97 LE 946); *Ellis v. Parks*, 212 Ga. 540 (93 SE2d 708)."

The trial judge erred in refusing the interlocutory injunction.

*Judgment reversed. All the Justices concur.*