## 49328. HUDGENS v. LOCAL 315 RETAIL, WHOLESALE, AND DEPARTMENT STORE UNION, AFL-CIO et al.

CLARK, Judge.

Scott Hudgens, owner of a large shopping center, sought a declaratory judgment and injunctive relief in the Fulton County Superior Court. There were three defendants: (1) a local labor union of the Retail, Wholesale, and Department Store Union, AFL-CIO, (2) an unincorporated association engaged in propagandizing against our nation's participation in the Southeast Asia conflict under the name of "The Atlanta Mobilization Committee," and (3) Richard Guy Steffel individually and as a member of that committee. As it was acknowledged in trial court (T. 54) that the AMC was no longer in existence and therefore to be dismissed from this suit, we deal only with the other two defendants. We find their factual and legal positions to be totally disparate. Accordingly we must consider their cases independently of each other. Additionally, it should be noted that plaintiff's voluntary elimination of his equity injunction prayers in the trial tribunal and the absence of any constitutional question resulted in this appeal being transferred to us by the Supreme Court. *Hudgens v. Local 315 &c.*, 231 Ga. 669 (203 SE2d 478).

The crux of the complaint as stated in its "Introductory Statement" is as follows: "Scott Hudgens seeks to have this Court declare that the Georgia Criminal Trespass Law, Title 26, Ga. Code Ann. § 26-1503, . . . may be enforced against the defendants and others similarly situated, and that the defendants be enjoined, pursuant to that law, from trespassing on the private shopping center premises of Scott Hudgens."

As To Steffel.

In October 1970, two years before the plaintiff landowner filed the instant suit, Steffel and others had sought to distribute handbills in the public areas of plaintiff's shopping center protesting the war in Viet Nam. On the first occasion they complied with the direction from the shopping center's representative to cease and leave. They reappeared two days later and were

again asked to depart from the premises. At least one participant refused to desist and remained on the premises. She was arrested by the DeKalb County police and charged with violation of the Georgia Criminal Trespass statute. Our record does not disclose disposition of these arrest charges but footnote 3 of the U. S. Supreme Court decision of Steffel v. Thompson, 415 U. S. 452, 456 (94 SC 1209, 39 LE2d 505), states "that the trial of petitioner's companion, Sandra Lee Becker, has been stayed pending decision of this case."

Steffel complied with the request to leave but thereafter filed a complaint in the United States District Court under the Civil Rights Act wherein he sought a Federal Declaratory Judgment that the Georgia Criminal Trespassing statute was being applied in violation of the petitioner's First and Fourteenth Amendment rights. After dismissal of his action in the trial court (Becker v. Thompson, 334 FSupp. 1386 (N. D. Ga. 1971)) and affirmance in the Circuit Court of Appeals (Becker v. Thompson, 459 F2d 919 (5th Cir. 1972)), certiorari was granted by the United States Supreme Court. There, in Steffel v. Thompson, supra, a unanimous court reversed and remanded for the District Court to determine if the controversy still continued in view of the reduction of the nation's involvement in Viet Nam.

The trial record in our appeal to which we are normally limited in considering any case (*Maloy v. Dixon,* 127 Ga. App. 151 (1) (193 SE2d 19)), contains nothing as to this Federal litigation. Nevertheless, we recognize all U. S. Supreme Court decisions and must additionally make reference thereto because Steffel has filed a dismissal motion in our court. He has moved to dismiss the appeal as to him on the basis that it "has been mooted by intervening changes in the fact situation which have eliminated the adversity between the parties." In doing so, Steffel has also provided us with a copy of his letter to the Hon. Albert J. Henderson, Jr., of the U. S. District Court. Therein he quotes the U. S. Supreme Court's suggestion from p. 460 of the Steffel opinion: "Since we cannot ignore the recent developments reducing the Nation's involvement in that part of the world, it will be for the District Court on remand to determine if

subsequent events have so altered petitioner's desire to engage in handbilling at the shopping center that it can no longer be said that this case presents 'a substantial controversy, between parties having adverse legal interests, sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " In his motion in our court to dismiss for mootness he reiterates that he will not return to the shopping center for any handbilling or similar activities.

Appellant argues Steffel's dismissal motion should be denied because of the possibility of a repetition and "the parties should be entitled to know their respective rights when such a confrontation occurs again." The controlling precedents require us to enter a dismissal as to Steffel. "The Georgia Declaratory Judgments Act makes no provision for a declaratory judgment which is merely advisory." *Liner v. City of Rossville,* 212 Ga. 664 (94 SE2d 862); *State of Ga. v. Hospital Authority,* 213 Ga. 894 (102 SE2d 543). Additionally, there is the absence of the essential prerequisite of "actual controversy" required by Code Ann. § 110-1101. As was quoted with approval from Borchard on Declaratory Judgments (2d Ed.) by our Supreme Court in *City of Nashville v. Snow,* 204 Ga. 371, 377 (49 SE2d 808): " '[T]he principle of a declaratory judgment is that it declares the existing law on an existing state of facts. The danger or dilemma of the plaintiff must be present, not contingent on the happening of hypothetical future events—and the prejudice to his position must be actual and genuine and not merely possible or remote.' "

Appellant eloquently resists granting the mootness dismissal on three grounds. He first asserts the case is not moot because of "the likelihood of recurrence of conflict between the parties regarding the rights of plaintiffs and others to engage in free speech activities on the property of the Center" citing Diamond v. Bland, 3 Cal. 3d 653 (477 P2d 733). This possibility does not exist in view of Steffel's express declaration in both the District Court and our court. His second argument based upon the recent ruling of Super Tire Engineering Co. v. McCorkle, U. S. (94 SC 1694, 40 LE2d 1) is that "without a resolution of the parties' respective claims, its right to

operate private commercial enterprise premises without interference may suffer a substantial adverse effect," is likewise not applicable. The third assertion is that the problem is "capable of repetition yet evading review." This is founded on these words used by the Supreme Court in both Southern Pac. Terminal Co. v. Int. Commerce Comm., 219 U. S. 498, 515 (31 SC 279, 55 LE 310) and Super Tire Engineering Co. v. McCorkle, supra. Such claim disappears in the light of the pending state criminal trespass charges against Steffel's companion and the fact that our decision does not deprive appellant of his undertaking a direct test of his right to forbid activities such as union picketing of tenants and distribution of handbills in the public area of his shopping center whenever such situation occurs by making charges against individuals refusing to recognize his private property claims.

As to the Labor Union Local.

The sole question presented by the enumerations of error as to the labor union is whether the state court has jurisdiction of this controversy or whether the matter is one that falls within the exclusive jurisdiction of the National Labor Relations Board. In answering the complaint the defendant union local filed a plea to the jurisdiction, a motion to dismiss, and an answer. The jurisdiction plea averred "The matter alleged in the complaint of the plaintiff constitutes conduct which is either protected or prohibited under the terms of the National Labor Relations Act, as amended (29 U.S.C. § 141, et seq.), in either of which events it lies wholly and exclusively within the jurisdiction of the National Labor Relations Board." (R. 27).

The factual setting as to the union involved a picketing situation by its members of one of the shopping center's stores occupied by a tenant of plaintiff. This incident had occurred on January 22, 1971, almost two years before Hudgens filed this suit in January 1973. In the interim the controversy between Hudgens and the union had already been brought before the National Labor Relations Board which was acknowledged by Hudgens in Paragraph 6 of its complaint. (R. 3). The record from pages 31 through 41 contains the National

Labor Relations Board decision and order rendered August 16, 1971, and reported as 192 NLRB 671. It recites that on the basis of charges filed on January 25, 1971, by Local 315, the General Counsel of the National Labor Relations Board had issued a complaint and hearing notice against Scott Hudgens. It further recites that "On March 24, 1971, the parties, including the General Counsel, entered into a stipulation in which, *inter alia,* they requested that this proceeding be transferred to the Board." The remainder of the Board's decision details facts similar to those pleaded in the Fulton County Superior Court complaint. Their order concludes that this picketing "is an unfair labor practice affecting commerce within the meaning of Section 2 (6) and (7) of the Act." (R. 38). Thus, it appears that at the time Scott Hudgens went into the Superior Court of Fulton County the controversy between him and the union with his stipulated concurrence was already being dealt with by the National Labor Relations Board.

Both here and in the trial court the briefs show the NLRB ruled adversely to Hudgens who then appealed to the U. S. Court of Appeals for the Fifth Circuit. That court remanded the case to the Board where another ruling (205 NLRB No. 104) adverse to Hudgens was rendered. Their ruling of an unfair labor practice was affirmed in Hudgens v. N. L. R. B., 501 F2d 161, during the pendency of this appeal. Those decisions were based wholly on federal labor law aspects.

When the Supreme Court of Georgia was first called upon to decide this question of jurisdiction in peaceful picketing cases it ruled in *Curry v. Construction &c. Laborers Union,* 217 Ga. 512 (123 SE2d 653) that our state courts had jurisdiction where the peaceful picketing was for an unlawful purpose and in violation of Code §§ 54-804 and 66-9906. Upon appeal this ruling was reversed by the U. S. Supreme Court in Construction Laborers v. Curry, 371 U. S. 542 (83 SC 531, 9 LE2d 514), on the basis that the National Labor Relations Act placed such controversies within the exclusive powers of the National Labor Relations Board.

Subsequently our Supreme Court was again called upon to consider this jurisdictional question in a matter

pertaining to secondary boycotts in *Armstrong Cork Co. v. Joiner,* 221 Ga. 789 (147 SE2d 317). We quote from page 795 of that opinion: "The case of San Diego Building Trades Council v. Garmon, 359 U. S. 236 (79 SC 773, 3 LE2d 775) sets out the criteria for determining whether State jurisdiction has been pre-empted by the National Labor Relations Act. The court said 'when it is clear or *may fairly be assumed* that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the Federal enactment requires that State Jurisdiction must yield.' Id., p. 244. (Emphasis ours.) The court continued, saying, 'If the board decides, subject to appropriate Federal judicial review, that conduct is protected by § 7, or prohibited by § 8, then the matter is at an end, and the States are ousted of all jurisdiction.' Id., p. 245. Finally the court said that 'at times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board.' "

It therefore appears from this controlling authority that the trial court correctly ruled that as this case involved the question of peaceful picketing it was exclusively within the federal jurisdiction. In fact, a reading of the N.L.R.B. orders which have been appended to the briefs show that the same question raised in the state courts was considered in those proceedings and the union's activities ruled allowable as constituting peaceful picketing.

San Diego Building Trades Council v. Garmon, supra, ruled that where an activity is arguably subject to the National Labor Relations Act it is not a matter for state determination. But appellant contends the instant situation comes within the two exceptions mentioned in the opinion. These stated exceptions recognize that states are free to regulate where the activity involved is "a merely peripheral concern of the Labor Management Relations Act," (p. 243) or ". . . where the regulated

conduct touched interests so deeply rooted in local feeling or responsibility. . ." (P. 244). Considering that the litigation with the union was still going on in the federal jurisdiction prior to the filing of the superior court action and that the N.L.R.B. had there ruled that the picketing here complained of was a protected activity under the Federal Act and had also held that the threat to arrest the pickets for criminal trespass was an unfair labor practice, we find this controversy does not come within either of the two exceptions.

While holding the instant controversy properly belonged in the federal jurisdiction we wish to point out that our ruling does not in any way limit the right of the state courts under the police powers of the state to regulate and control disorderly or violent picketing. Furthermore, the state retains the power to prosecute and punish for violations of its criminal statutes. Additionally, our ruling in no way limits the right of state courts to handle civil damage suits which may arise from labor disputes. Most important, our refusal to pass upon the right of the appellant to seek declaratory judgment here does not limit our power to construe state laws when we have jurisdiction.

In short, our limited ruling is in conformance with the statement made by the appellant in his brief in the trial court (R. 99) that "The only issue presently before the court, as the hearing herein makes obvious, is one of jurisdiction" and with the trial court's consideration of that single issue.

*Judgment affirmed. Bell, C. J., and Quillian, J., concur.*

ARGUED MAY 6, 1974 — DECIDED OCTOBER 7, 1974 — REHEARING DENIED NOVEMBER 18, 1974 — ■

*Jones, Bird & Howell, Dow N. Kirkpatrick, Lederer, Fox & Grove, Lawrence M. Cohen,* for appellant.

*Adair, Goldthwaite, Stanford & Daniel, Morgan C. Stanford, Moore, Alexander & Rindskopf, John R. Myer,* for appellees.